JEANETTE MURLENE GRAHAM *v.* ERNEST LEEROY GRAHAM

73-45                                              495 S.W. 2d 144

Opinion delivered June 4, 1973

*Arnold, Hamilton & Streetman,* for appellant.

*James M. Barker,* for appellee.

CONLEY BYRD, Justice. Involved on this appeal by appellant Jeanette Murlene Graham is whether appellee Ernest LeeRoy Graham was a resident of this State for the time required by Ark. Stat. Ann. § 34-1208 (Repl. 1962), before obtaining a divorce on May 2, 1972. The trial court ruled that appellee was a resident within the terms of our divorce statutes and hence this appeal.

Ark. Stat. Ann. § 34-1208 provides:

"The plaintiff, to obtain a divorce, must prove, but need not allege, in addition to a legal cause of divorce:

"First: A residence in the State by either the plaintiff or defendant for 60 days next before the commencement of the action, and a residence in the State for three (3) full months before the final judgment granting the decree of divorce. . . ."

Ark. Stat. Ann. § 34-1208.1 provides:

"The word 'residence' as used in Section 34-1208 is defined to mean actual presence and upon proof of such the party alleging and offering such proof shall be considered domiciled in the State and this is declared to be the legislative intent and public policy of the State of Arkansas."

Some of the facts surrounding this proceeding are undisputed. The parties hereto separated in Oklahoma. Appellant went to her parents' home in Missouri. Appellee went to his parents' home in Walker, Louisiana. Appellee had had no prior connections with Ashley County, Arkansas before making a visit on January 8, 1972. While visiting on that occasion he consulted a lawyer and obtained a form letter explaining the Arkansas divorce laws. He intended to return the next week to establish a residence for the purpose of obtaining a divorce but was prevented from returning at that time because of an industrial accident. As a result of the accident he was hospitalized for six days and had casts on both legs and feet. He was treated at all times By Dr. Allan C. Farries of Baton Rouge, Louisiana. March 30, 1972, appellee caused a divorce complaint to be filed.[1] March 6, 1972, his lawyer wrote the appellant advising her of appellee's intention to file for divorce and requested her to sign a power of attorney. March 9, 1972, appellant's Missouri lawyers advised appellee's lawyer that she did not consider appellee to be a resident of the State of Arkansas and that she would resist the granting of a divorce. March 19, 1972, appellee's lawyer advised appellant's Missouri counsel that he would proceed with the divorce. After receipt of notice of the filing of the complaint from the attorney ad litem, appellant through her North Arkansas lawyer on April 14, 1972, wrote the attorney ad litem, with a copy sent to appellee's attorney, that appellee was a resident of Louisiana and that they were in the process of finding local counsel for her. The attorney ad litem caused the letter from the North Arkansas lawyer to be placed with the files in the clerk's office. Without any attempt to comply with Ark. Stat. Ann. § 28-353 (2) (Repl. 1962), and before the 30 day time limit for appellant to respond to the

---

[1]The complaint seems to be a form in which the appropriate names and dates are filled out on a typewriter.

complaint had expired, the secretary in appellee's lawyer's office on April 17, took the deposition of appellee and his sister Gail Graham. At that time both witnesses swore that appellee had been a resident of the State of Arkansas for more than three full months. The sister also swore that she was a resident of Arkansas. April 25th appellant's North Arkansas counsel forwarded a demurrer to the clerk of the court. This demurrer, which contained no certificate of service and was filed on April 28th, stated that appellee was not a resident of Arkansas. On May 2, 1972, the trial court without ruling on the demurrer and based upon the evidence contained in the depositions taken by the lawyer's secretary signed a decree granting appellee a divorce. May 7th appellant's North Arkansas counsel caused a copy of the demurrer filed on April 28th to be served on appellee's counsel and on May 15th filed a petition to vacate.

In taking the deposition of appellee, he stated that he moved to Arkansas on January 29th to establish a residence for divorce purposes. He admitted that both legs and feet were in a cast for sometime and that during part of that time he was in a wheelchair. Admittedly he went back to the doctor in Baton Rouge at intervals, a distance of three hundred miles. He received Workmen's Compensation checks during the time from January 29th through May 2nd and he cashed them at a bank in Denham, Louisiana, a small town not far from Baton Rouge. While living in Arkansas from January 29th to May 2nd, he stayed at a motel. His sister Gail Graham stayed with him some on week-ends and Atonia Leah Harris took care of him some during the week. Mrs. Paul Graham and his mother Lorene Graham did not visit him in Arkansas. Mrs. Harris was in the process of obtaining 'a divorce at the time but he did not know when her divorce became final. He married Mrs. Harris on May 26, 1972, in Walker, Louisiana. He has resided in Walker, Louisiana with his mother since sometime in June, 1972. His receipts show that he rented No. 19, at a motel from January 29th to February 5th; No. 17, from February 5th to February 12th and No. 47 from February 12th through April 29, 1972. He testified that he lived in room No. 11. Appellee in answer to questions such as how long he stayed in room No. 11, how he went

back and forth to see the doctor and how often he went back and forth to see the doctor, took the Fifth Amendment on the ground that to answer might tend to incriminate him. Admittedly he did not know anybody in Ashley County other than his lawyer and the lawyer's son that ran the motel. He testified that Mrs. Harris and his sister Gail Graham lived in Walker, Louisiana during the time here involved. His pickup truck still had Oklahoma licenses on it at the time of taking his deposition.

Appellee's lawyer testified that appellee contacted him on January 8th and called him again when he established his residence on January 29th. That the motel where appellee stayed was owned by a corporation which in turn was owned by his wife and two of his sons. He saw appellee at the motel on a number of occasions when he was out there to visit his grandchildren. When asked if he was aware that appellee made trips to see his doctor, the lawyer stated that he was and that there were occasions when he spent several days away.

Notwithstanding that the lawyer testified that appellee was absent for several days on occasion, the lawyer's son testified that appellee was not absent for any length of time—in other words it was his testimony that appellee was there at all times during the period involved.

Lloyd W. Albright of Alexandria, Louisiana, the manager of State Adjusters, an adjusting agency for Rockwood Insurance Company, testified that according to his records appellee was a resident of Walker, Louisiana during the period involved. He introduced letters written by appellee to his office under dates of February 10, 1972; February 26, 1972; March 10, 1972; April 24, 1972; May 4, 1972 and May 8, 1972, all of which showed a return address to Ernest LeeRoy Graham, Route 1, Walker, Louisiana. One of these letters contained receipts from Lorene Graham, Toni Harris and Mrs. Paul E. Graham showing that each of them has received of Ernest LeeRoy Graham compensation for 16 days from February 10 to February 25, 1972, for constant sitting care at the rate of $1.50 per hour for 8 hours per day. Appellee's doctor had certified to State Adjusters that

full time sitting services were necessary for appellee. The letter of May 4th was a complaint from appellee to State Adjuster's agent Mr. Benefield saying: "I waited for you to come on Monday, however, for some reason you did not make it." Mr. Albright's records showed that his agents had always contacted appellee in Walker, Louisiana. Mr. Albright also introduced fifteen drafts under dates from 1-26-72 through 5-3-72, which appellee had cashed in Louisiana. The draft dated 3-29-72, was endorsed "Ernest LeeRoy Graham, Okla Lic No. 8239454, Rt. 1, Box 509, Walker, Louisiana."

In addition to the foregoing, the record shows that Atonia Leah Harris, on March 21, 1972, filed a form complaint for divorce in the same jurisdiction by the same lawyer representing appellee and that a divorce decree was also rendered in her favor on May 2, 1972.

Upon the foregoing record it is rather obvious that appellee was not a resident of the State for the required length of time within the meaning of Ark. Stat. Ann. § 34-1208.1 *supra.* Appellee not only used Walker, Louisiana as his address when corresponding with the Workmen's Compensation Carrier but he had to have been there a substantial number of times to cash the fifteen drafts. Furthermore, he used Walker, Louisiana as his address when cashing the drafts.

It is not necessary to allege or show a meritorious defense to set aside a divorce for lack of jurisdiction of the subject matter. See *Corney* v. *Corney,* 79 Ark. 289, 95 S.W. 135 (1906), and *Feldstein* v. *Feldstein,* 208 Ark. 928, 188 S.W. 2d 295 (1945).

Reversed and remanded.